**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARY HENDRICKS GILLIAM,

                Plaintiff,

vs.                                                 Case No. 3:17-cv-298-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Mary Hendricks Gilliam ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "degenerative disc disease," "herniated discs," "neuritis," "hypertension," "peripheral neuropathy," "vision problems," and "memory loss." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed May 24, 2017, at 81, 93, 105, 119, 257 (some capitalization and emphasis omitted). On June 26, 2013, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of June 30, 2011.[2] Tr. at 216-19 (DIB), 220-28 (SSI). Plaintiff's applications were denied initially, see Tr. at 81-89, 91, 92, 134-36

---

       [1]       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed May 24, 2017; Reference Order (Doc. No. 13), entered May 25, 2017.

       [2]       Although filed on June 26, 2013, the protective filing date is listed elsewhere in the administrative transcript as May 31, 2013. See Tr. at 81, 93, 105, 119.

(DIB), 105-16, 117, 118, 137-39 (SSI), and were denied upon reconsideration, see Tr. at 93-102, 103, 104, 146-50 (DIB), 119-31, 132, 133, 151-55 (SSI).

On September 14, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 38-80. At the time of the hearing, Plaintiff was fifty-two (52) years old. Tr. at 43. During the hearing, Plaintiff amended her alleged disability onset date to May 31, 2013, and in so doing, Plaintiff recognized she would be ineligible for DIB because she was last insured for DIB through a date prior to the amended onset date. Tr. at 40-41, 43; see also Tr. at 19 (Decision discussing the amendment), 251 (form entitled, "Request to Amend Onset Date"). Plaintiff, therefore, withdrew the DIB claim. Tr. at 251.

The ALJ issued a Decision on October 30, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 19-32. Near the beginning of the Decision, the ALJ dismissed the DIB claim; accordingly, the Decision only addresses Plaintiff's SSI claim. Tr. at 19.[3] Plaintiff then submitted additional evidence to the Appeals Council in the form of a brief authored by her counsel, a letter written by William V. Choisser, M.D., J.D., and some medical records. Tr. at 5-6; see Tr. at 337-44 (brief), 345 (letter), 516-21 (medical records). On January 19, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On March 14, 2017, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[3] Plaintiff does not challenge this dismissal on appeal.

On appeal, Plaintiff makes three arguments, and they are all related. See Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed August 23, 2017, at 1. First, Plaintiff argues that the ALJ "improperly minimized [Plaintiff's] upper extremity limitations identified by not only the state agency consultant in November 2013 but also by two separate consultative examining physicians in July 2013 and August 2015." Pl.'s Br. at 1; see id. at 8-16.[4] Second, Plaintiff contends that the ALJ "failed to adequately explain why []he was rejecting [R. James Mabry, M.D.'s] state agency consultative opinion regarding [Plaintiff's] upper extremity limitations." Id. at 1; see id. at 16-19. Third, Plaintiff argues that the ALJ's "rationale for rejecting [Kristen Schmits, M.D.'s] examining opinion and Dr. Choisser's examining opinion is not supported by substantial evidence and requires reversal and remand." Id. at 1; see id. at 19-25. On October 23, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[4] Plaintiff's second and third arguments address the same medical opinions as the first argument.

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-32. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 31, 2013, the amended alleged onset date." Tr. at 21 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: cervical disc disease, obesity, hypertension, adjustment disorder with anxiety, degenerative joint disease of the knees, lumbar/thoracic radiculitis, peripheral neuropathy, and chronic obstructive pulmonary disease." Tr. at 21-22 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except no more than occasional use of foot/hand controls; no more than occasional overhead reaching; no climbing of ladders and scaffolds or crawling; no more than occasional climbing of ramps and stairs or kneeling; no more than frequent balancing, stooping, and crouching; no work around unprotected heights or moving mechanical parts; no concentrated exposure to

dust, fumes, gases, humidity, and wetness; no exposure to temperature extremes; limited to simple tasks, simple work-related decisions with no more than occasional interaction with supervisors, co-workers, and the general public, time off tasks is accommodated by normal breaks; requires a sit/stand option allowing for change of position at least every 30 minutes with [] brief positional changes lasting no more than 3 minutes at a time where [Plaintiff] remains at the workstation during the positional change.

Tr. at 24 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "cashier" and a "venetian blind assembler." Tr. at 30-31 (some emphasis and citations omitted). At step five, the ALJ considered Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("limited education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that "exist[s] in significant numbers in the national economy." Tr. at 31 (emphasis and citations omitted). Namely, the ALJ identified representative jobs of "office helper," "towel folder," and "garment sorter." Tr. at 31-32. The ALJ concluded that Plaintiff "has not been under a disability . . . from June 30, 2011, through the date of th[e D]ecision." Tr. at 32 (emphasis and citation omitted).[6]

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but

---

[6] Although recognizing earlier in the Decision that Plaintiff had amended the alleged onset date to May 31, 2013, Tr. at 19, the ALJ mistakenly relied on the original alleged onset date in making this finding, see Tr. at 32.

less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff makes three arguments on appeal: 1) that the ALJ erred in "improperly minimiz[ing Plaintiff's] upper extremity limitations" in the RFC in light of the consistent opinions of Dr. Mabry, Dr. Schmits, and Dr. Choisser, who all opined Plaintiff has more limitations in this regard than the ALJ included in the RFC; 2) the ALJ "failed to adequately explain why []he was rejecting Dr. Mabry's state agency opinion" on the upper extremity limitations; and 3) the ALJ's "rationale for rejecting Dr. Schmits' examining opinion and Dr. Choisser's examining opinion is not supported by substantial evidence and requires reversal and remand." Pl.'s Br. at 1. Defendant responds that the ALJ properly considered the various opinions and that the RFC assessment regarding the upper extremity limitations

is supported by substantial evidence. Def.'s Mem. at 5-14. All of the arguments on appeal are related; they are therefore addressed together.

The Regulations[7] establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[7] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[8] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991);

---

[9] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, every medical opinion that the ALJ addressed regarding Plaintiff's physical impairments assigned greater upper extremity limitations than did the ALJ. These rather consistent opinions were essentially rejected by the ALJ as they relate to Plaintiff's upper extremity limitations. The ALJ erred in rejecting these opinions and in assigning the relevant RFC limitations of "no more than occasional use of . . . hand controls" and "occasional overhead reaching." Tr. at 24.

The ALJ addressed the opinion of non-examining state agency consultant Dr. Mabry (although not referring to Dr. Mabry by name), and assigned Dr. Mabry's opinion "some weight," reasoning that the opinion is "supported by detailed explanation, rationale, and analysis of the medical evidence of record." Tr. at 28. The ALJ noted, however, that "evidence received subsequent to [Dr. Mabry's] review" shows "additional non-exertional physical limitations," Tr. at 28, and the ALJ purportedly accounted for such additional limitations in the RFC, see Tr. at 24, 28. Instead, with respect to the upper extremity

limitations, the assigned RFC is actually less restrictive than Dr. Mabry's opinion. Indeed, Dr. Mabry opined Plaintiff has manipulative limitations to the extent that Plaintiff is limited in reaching any direction (including overhead), "left in front and/or laterally," and "[l]eft [o]verhead," as well as limited in handling, fingering, and feeling on the left side. Tr. at 127-28. In support of these limitations, Dr. Mabry pointed to specific medical evidence that showed decreased grip and decreased sensation in Plaintiff's left fingers. Tr. at 128. The ALJ's reason for assigning "some weight" to Dr. Mabry's opinion—because it is supposedly less restrictive than later evidence shows—simply does not square with the ALJ's election to include fewer restrictions than Dr. Mabry assigned regarding Plaintiff's upper extremities. This is error necessitating remand for reconsideration of Dr. Mabry's opinion.

The ALJ also addressed the opinion of examining physician Dr. Schmits, assigning it "some weight." Tr. at 28 (citation omitted). Dr. Schmits examined Plaintiff on July 27, 2013 and authored a report the same day. Tr. at 354-57. According to Dr. Schmits, Plaintiff "has a moderate limitation in the ability to use her upper extremities likely due to cervical spinal nerve radiculopathy." Tr. at 356. Dr. Schmits opined that Plaintiff "may have trouble with jobs that require a significant amount of typing due to the numbness in her fingers." Tr. at 356. Dr. Schmits stated that Plaintiff "should not be required to perform activities that require significant upper extremity strength and cervical spinal flexibility," and she also stated that Plaintiff "should not lift over 10 pounds at this time." Tr. at 356. In assigning "some weight" to this opinion, the ALJ stated that "the evidence as a whole does not support the restriction of no lifting over 10 pounds." Tr. at 28. According to the ALJ, "[i]n particular, [Dr. Schmits's] own exam revealed grip strength was only slightly reduced (4+/5 bilaterally), proximal muscle

strength was only sight[ly] reduced (4+/5) in the upper and lower extremities bilaterally, and sensory exam to touch was only slightly decreased on the left ring and middle fingers." Tr. at 28. The ALJ pointed to no other evidence of record in support of the finding that "the evidence as a whole does not support the restriction of no lifting over 10 pounds." Tr. at 28.

The ALJ's rejection of Dr. Schmits's assignment of no lifting over ten pounds, in favor of the lifting requirements of light work ((i.e., "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b)), finds some support in the record. In this regard, Plaintiff reported to Dr. Choisser that "[s]he doesn't lift more than 10 pounds at a time because of weakness in her hands especially on the left side and she frequently drops things." Tr. at 472. Ultimately, Dr. Choisser opined Plaintiff can occasionally lift up to ten pounds and rarely up to twenty pounds. Tr. at 466. Dr. Mabry, whose opinion supposedly was not restrictive enough (according to the ALJ), assigned limitations of lifting twenty pounds occasionally and ten pounds frequently. Tr. at 126-27. But, Plaintiff testified that her purse weighs about ten pounds, and she has not "carried [it] on [her] shoulders for two years," instead opting for a lighter wallet. Tr. at 72. On balance, substantial evidence supports the ALJ's rejection of the lifting restrictions assigned by Dr. Schmits.

As explained above, however, Dr. Schmits assigned other restrictions regarding Plaintiff's upper extremities that the ALJ did not accept or otherwise explain why he was rejecting. See Tr. at 28; see also Tr. at 356 (Dr. Schmits stating that Plaintiff "has a moderate limitation in the ability to use her upper extremities likely due to cervical spinal nerve radiculopathy"; Plaintiff "may have trouble with jobs that require a significant amount

of typing due to the numbness in her fingers"; and Plaintiff "should not be required to perform activities that require significant upper extremity strength and cervical spinal flexibility"). Especially in light of these restrictions being rather consistent with the other medical opinions, on remand, Dr. Schmits's opinion shall be reconsidered.

The ALJ also addressed the opinion of Dr. Choisser, assigning it "little weight." Tr. at 29. Dr. Choisser examined Plaintiff on August 27, 2015 at the request of Plaintiff's counsel. Tr. at 345, 472-73. After the examination, Dr. Choisser wrote a summary of his examination findings, Tr. at 472-73, and opined regarding specific work-related limitations, Tr. at 464-68, as well as regarding Listing 1.04A (addressing disorders of the spine), Tr. at 470. On examination, Plaintiff's grip strength in both hands was 3/5, and she "exhibit[ed] a bilateral intention tremor on finger nose testing." Tr. at 473. Relevant to the upper extremity limitations, Dr. Choisser opined Plaintiff could use her hands to grasp, turn, and twist objects twenty percent of the day; Plaintiff could use her fingers for fine manipulations twenty percent of the day, and Plaintiff could use her arms for reaching (including overhead) twenty percent of the day. Tr. at 467.

In support of assigning "little weight" to Dr. Choisser's opinion, the ALJ wrote:

The undersigned notes that Dr. Choisser had the opportunity to examine [Plaintiff] and . . . review two consultative examinations, one of which was psychological, as well as a MRI from October of 2013. However, his opined severity is inconsistent with his own examination as well as examinations by treating physicians and a consultative physician, diagnostic testing, and statements/testimony from [Plaintiff] regarding activities of daily living. Furthermore, . . . [Plaintiff] underwent the examination that formed the basis of the opinion not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

Tr. at 29 (citations omitted).  The ALJ also rejected Dr. Choisser's opinion at step three to determine Plaintiff does not meet or equal a listing, relying again in part on the fact that Plaintiff's counsel arranged for the examination and Dr. Choisser was presumably paid for the report.  Tr. at 22.

To the extent the ALJ rejected Dr. Choisser's opinion on the upper extremity limitations as inconsistent with his examination and the other evidence of record, the rejection is not supported by substantial evidence.  As explained above, the opinions on upper extremity limitations are actually quite consistent. Further, Plaintiff consistently reports problems and numbness regarding her left arm and fingers. See, e.g., Tr. at 347 (reporting in May 2013 to emergency room physician left arm pain and symptoms including numbness and tingling that "are aggravated by movement, lifting weight"), 376, 458 (duplicate) (reporting in August 2013 to Azalea Health "left arm pain down to the middle and the ring finger on the left" with "numbness in the hand"), 455 (reporting to Azalea Health in September 2013 that the "[l]eft arm is painful," "less grip strength and muscle pain in the LUE,"[10] and also "now ha[ving] pain in the right hand"), 441 (reporting in January 2014 to Azalea Health "symptoms includ[ing left] hand numbness"), 416 (reporting in July 2014 to Azalea Health "continu[ing] to have numbness and tingling in the fingertips and pain from the neck radiating down the left arm"), 354 (reporting to Dr. Schmits left arm numbness and left finger numbness on left side), 472 (reporting to Dr. Choisser "pain in the base of her cervical spine with pain that radiates down her left arm and numbness of her left index finger"), 69-70

---

[10]   "LUE" is believed to stand for "left upper extremity."

(Plaintiff's testimony that she cannot lift overhead and grab something out of the pantry with her left hand). Nor does Plaintiff's testimony about her activities of daily living present substantial evidence to reject the upper extremity limitations assigned by Dr. Choisser. See Tr. at 65-69.

Finally, the ALJ's reliance in part on the fact that Plaintiff's counsel arranged the examination with Dr. Choisser for discounting the opinion was error.[11] "[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." Tavarez v. Comm'r of Soc. Sec., 638 F. App'x 841, 847 (11th Cir. 2016) (quotation and citation omitted). In light of this reason being infirm, combined with the others, the matter must also be remanded for further consideration of Dr. Choisser's opinion (both as to the step three findings and as to the upper extremity limitations).

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

---

[11] Dr. Choisser was so distraught by the rejection for this purpose that he wrote a letter to the Appeals Council stating that he has "perform[ed] medical evaluations of claimants for disability" for more than twenty years; that his "professional integrity has not been challenged until now"; and that there "was nothing false about [Plaintiff's] history, nor was there anything biased about [Dr. Choisser's] examination." Tr. at 345. Dr. Choisser sought to "appeal . . . th[e ALJ's D]ecision because it creates a dangerous precedent of judicial bias against the independent evaluation of a claimant by a medical practitioner." Tr. at 345. In denying review, the Appeals Council recognized the letter but stated that it "has determined that there was no abuse of discretion and that no other basis exists to grant review in this case." Tr. at 2.

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

 (A) Reconsider the opinions of Dr. Mabry, Dr. Schmits, and Dr. Choisser;

 (B) In light of that reconsideration, reevaluate whether Plaintiff meets a listing and whether additional upper extremity limitations need to be included in the residual functional capacity; and

 (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 29, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record